# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

        **v.**

**TDC MANAGEMENT CORP. &**
**T. CONRAD MONTS,**                        **Civil Action No. 89-1533 (JDB/JMF)**

    **Defendants,**

    **and**

**WASHINGTON DEVELOPMENT**
**GROUP – A.R.D., INC.,**

    **Garnishee/Intervening Party.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court so that it may issue a "Report and Recommendation on the issue of whether the United States can garnish funds held in escrow and claimed by Washington Development Group to satisfy a judgment obtained against defendants Conrad Monts and TDC in this Court." Order [#239] at 1. The Court's view is that, in referring this matter, Judge John D. Bates intended the Court to address all issues directly related to whether the government's Motion for a Disposition Order [#259] should be granted.

The underlying cause of action in this matter is a claim under the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq*.,[1] in which Judge John Garrett Penn—in 2001—granted summary judgment for the government against defendants T. Conrad Monts and TDC Management Corporation ("TDC"), jointly and severally, in the amount of $1,285,198.31. [#259] at 4. Subsequently, in unrelated proceedings, the District of Columbia government was

---

[1] All references to the United States Code are to the electronic versions that appear in Westlaw or Lexis.

ordered by the Superior Court for the District of Columbia to pay intervenor Washington Development Group – A.R.D., Inc. ("WDG") $8,444,366 in damages resulting from breach of a lease agreement. Id. at 6. After it learned of that judgment in favor of WDG, the government moved, in this case, to attach WDG's judgment. Id.

In its motion to garnish funds from the WDG judgment, the government makes two alternative arguments for why it is entitled to garnish the judgment: 1) defendant Monts "exclusively managed and controlled both" defendant TDC and WDG, and the judgment that will be paid to WDG is therefore defendant Monts's "'property' that may be garnished under the broad definition and scope of the Federal Debt Collection Procedure Act [("FDCPA")], 28 U.S.C. § 3001, *et seq.*"; and 2) WDG is the alter ego of defendant Monts "for the purpose of determining who really owns the money judgment." Id. at 4.

Defendant Monts, however, died on December 19, 2009. See Statement Noting the Death of Defendant T. Conrad Monts [#203]. No motion has been made to substitute an appropriate party, which puts the parties and this Court in the untenable position of resolving a garnishment without the judgment debtor actually being a living party to the case; after all, the government's theories are specifically predicated on defendant Monts as the judgment debtor, not TDC. Rule 25 exists precisely to avoid this problem and to ensure that the death of a party does not prejudice his rights. See Fed. R. Civ. P. 25.

As a preliminary matter under Rule 25, this Court must determine whether the claim against Monts was "extinguished" by his death. Given that judgment has already been entered against Monts, this may seem like an academic argument. However, the government has initiated garnishment proceedings under the FDCPA, and that statute merely provides the "exclusive civil procedures for the United States to recover a judgment on a debt"; it is not an independent cause

of action. See 28 U.S.C. § 3001. Instead, the actual "claim," as is relevant to Rule 25, remains the underlying cause of action under the FCA. Thus, the question is whether a claim under the FCA is extinguished at death.

Since the Supreme Court's ruling in Cook County, Illinois v. United States ex rel. Chandler, 538 U.S. 119, 129 (2003), the weight of the authority has been that claims under the FCA are not extinguished by the death of a party. See U.S. ex rel. Colucci v. Beth Israel Med. Ctr., 603 F. Supp. 2d 677, 680-83 (S.D.N.Y. 2009); see also U.S. ex rel. Hood v. Satory Global, Inc., 946 F. Sup. 2d 69, 81 (D.D.C. 2013) (noting that district courts have been "nearly unanimous" in ruling that FCA claims survive the death of a relator-plaintiff). While these cases directly address only whether the death of a relator in a *qui tam* action causes the claim to be extinguished, their reasoning applies equally to the death of a defendant: federal common law applies, and the FCA serves a primarily remedial purpose. See Beth Israel Med. Ctr., 603 F. Supp. 2d at 680-81.

In light of this, it is evident that Rule 25(a)(1) applies, and the parties must make a motion for substitution. Although a suggestion of death was filed in December 2009, see [#203], it is the law of this circuit that a suggestion of death does not itself begin the ninety-day countdown required by Rule 25. See McSurley v. McClellan, 753 F.2d 88, 97-99 (D.C. Cir. 1985). Instead, that time begins to run only after the plaintiffs have identified a party that could be substituted for the decedent. Id. This prevents parties from unjustly having their claims dismissed due to narrow time windows without an opportunity to find a substitute party.

This Court is aware that counsel for defendants and WDG previously moved to have the entire case dismissed because the government did not substitute a defendant within ninety days of the death of defendant Monts. See Intervengn [sic] Party Washington Development Group –

3

A.R.D., Inc's Motion for Involuntary Dismissal and Termination of Case No. 89-1533 [#222] at 4. Judge Bates denied this motion both because WDG could not assert the rights of a third party (in this case, Monts), and because—as discussed above—the law of this circuit does not require dismissal. See Memorandum Opinion and Order [#235] at 11-12.

Judge Bates's ruling was unquestionably correct, but a larger issue—and one that drives this Court's current Order—looms. If defendant Monts died in 2009 and defendant TDC ceased to exist in 2003, then who has been representing their interests in this post-judgment phase of the litigation? The same counsel, David Hamilton of Womble, Carlyl, Sandridge & Rice, LLP, purports to be counsel for "Defendants TDC Management Corp. and T. Conrad Monts, and Intervening party Washington Development Group – A.R.D., Inc." See Defendants TDC Management Corp.'s and T. Conrad Monts' and Intervening Party Washington Development Group – A.R.D., Inc.'s Opposition to Plaintiff's Request for Issuance of Disposition Order [#261] at 27. Yet the whole point of the defendants' opposition to the government's motion is that WDG is *not* the alter ego of defendant Monts. If they are separate, then who is the actual client who is directing Mr. Hamilton? And even if WDG *is* the alter ego of defendant Monts, it cannot be that a corporation is directing the legal defense of its deceased owner. In other words, this Court cannot understand how it could be possible for Mr. Hamilton or WDG to represent the interests of defendant Monts. The fact that defendant Monts's will "was never probated and, therefore, there was no successor, administrator, or executor," see [#261] at 17, is irrelevant, as an appropriate substitute party—such as his wife—likely exists. See McSurely, 753 F.2d at 97 ("Each had named his surviving spouse executor of his estate and provided for her to receive all his assets. The Brick and Adlerman wills were not probated, however. Therefore, neither widow was ever designated 'legal representative' of her husband's estate.").

Accordingly, this Court believes it inappropriate to proceed in this matter until an appropriate substitution has been made so that a representative may defend the interests of defendant Monts. The Court will stay all proceedings in this matter until after a motion for substitution has been filed. The stay will only be lifted once the substituting party makes an appropriate filing with the Court.

It is, hereby, **ORDERED** that this matter is **STAYED** until such time that a party files a motion for substitution pursuant to Federal Rule of Civil Procedure 25(a)(1) and an appropriate response from the substituting party is filed with the Court.

**SO ORDERED.**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE